**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2117-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMEEL DIXON, a/k/a
JAMEEL DICKSON, and
JAMES DIXON,

    Defendant-Appellant.

_____

          Submitted April 6, 2022 – Decided June 23, 2022

          Before Judges Geiger and Susswein.

          On appeal from the Superior Court of New Jersey, Law
          Division, Hudson County, Indictment No. 11-08-1421.

          Joseph E. Krakora, Public Defender, attorney for
          appellant (Amira R. Scurato, Designated Counsel, on
          the brief).

          Esther Suarez, Hudson County Prosecutor, attorney for
          respondent (Stephanie Davis Elson, Assistant
          Prosecutor, on the brief).

PER CURIAM

Defendant appeals from the August 19, 2020 Law Division order denying his petition for post-conviction relief (PCR). Judge John A. Young, Jr., determined that defendant's PCR petition was time-barred, but nonetheless addressed defendant's contentions on the merits. Judge Young found that his claims were based on bare assertions and, as a result, concluded that defendant had failed to establish a prima facie case to justify an evidentiary hearing. After carefully reviewing the record in light of the governing legal principles, we affirm substantially for the reasons explained in Judge Young's cogent written opinion.

I.

We discern the following pertinent facts and procedural history from the record. This case arises from two separate incidents. On March 26, 2011, defendant and codefendant Khadijah Neal approached the first victim, W.B., intending to rob him. When W.B. told them he did not have any money, "he was pushed to his knees, and . . . defendant shot him in the back of the head." Defendant and Neal fled the scene. W.B. "[m]iraculously" survived.

Two days later, on March 28, 2011, police officers responded to a reported robbery of a taxi driver, A.G. A.G. told police he had received a phone call shortly before midnight from a man, later identified as defendant, asking to be

2

picked up at a nearby address. He picked up defendant, who was known to A.G. from previous encounters, and a woman, later identified as Neal. When they reached their destination, Neal exited the car and defendant stayed in the vehicle and requested change for $100. A.G. did not have change so they drove to a nearby bar to get some and then back to the address for the drop-off. Defendant pulled out a handgun, pointed it at A.G.'s neck and demanded money. A.G. handed him $115 and a phone. After defendant exited the car, A.G. called police and described the robber as a black male, 6'1" tall, and 180 pounds. He also described codefendant Neal, who had been carrying an orange bag.

Officers later responded to a reported dispute nearby involving a man and woman who met the descriptions and who were reported to be holding a handgun and a knife. The tip reported that the man and woman were waiting for a taxi. When police arrived, they saw defendant and Neal waiting in the back of a taxi. Neal had an orange bag and defendant was in possession of a handgun. The officers arrested defendant and A.G. positively identified him at the police station.

On August 3, 2011, a Hudson County grand jury returned an indictment pertaining to the March 26, 2011 incident charging defendant and Neal[1] with

---

[1] Only defendant was named in count six.

first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (count one); first-degree robbery, N.J.S.A. 2C:15-1 (count two); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count three); second-degree unlawful possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b) (count six).

On August 17, 2011, a Hudson County grand jury returned a separate indictment pertaining to the March 28, 2011 incident. That indictment charged defendant with four additional counts and Neal[2] with one additional count. The indictment charged first-degree robbery, N.J.S.A. 2C:15-1 (count one); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-4(a) (count three); receiving stolen property, N.J.S.A. 2C:20-7 (count four); and second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b) (count five).

On December 19, 2011, defendant pled guilty pursuant to a negotiated plea agreement to count two of the first indictment and count one of the second

---

[2] Only Neal was named in count four, while only defendant was named in the remaining counts.

indictment. As part of the plea agreement, the State agreed to dismiss the remaining charges and to recommend concurrent eighteen-year prison terms subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant stated during the plea colloquy that he was thirty years old and had earned a GED. The trial court asked if defendant had used "any alcoholic beverage, narcotic or medication or any substance that would interfere with [his] ability to understand what [he is] doing here today?" and defendant responded, "No." The following exchange then took place:

> DEFENSE COUNSEL: Judge, if I could just say I spoke to my client earlier. He is on a prescriptive medication. I asked if that affects his ability to understand what I have been telling him what's going on here today. He indicated to me it does not.
>
> THE COURT: Did you hear and did you understand the plea agreement placed on the record?
>
> DEFENDANT: Yes.
>
> THE COURT: Do you realize if you plead guilty today it's going to be almost impossible for you to take it back?
>
> DEFENDANT: Yes.

Defendant then "acknowledged he was giving up the right to a trial by jury; the right to remain silent; the right to cross[-]examine witnesses brought against him; and the right to compel witnesses. [Defendant] said no one had

made him any promises other than the agreement placed on the record." He additionally stated that he was satisfied with the representation provided by his attorney and confirmed his signature on the plea forms.

Defendant then provided a factual basis for both robbery convictions. As to the robbery charged in the first indictment, defendant stated that on March 26, 2011, he tried to steal money from the victim, W.B., while armed with a handgun. As to the second indictment, defendant stated that on March 28, 2011, he took money from a cab driver, A.G., using a handgun. The court accepted both guilty pleas.

On February 3, 2012, the court sentenced defendant in accordance with the plea agreement to concurrent eighteen-year prison terms subject to NERA. The court advised defendant that he had forty-five days to appeal and five years to file for PCR.

Defendant filed a timely direct appeal which we heard on the May 8, 2013, Sentencing Oral Argument (SOA) calendar. On the same day, we rejected defendant's contention that the sentence was excessive but remanded solely to make a technical correction to the Judgment of Conviction.

On August 15, 2019, defendant filed the present petition for post-conviction relief. Oral argument on the petition was heard on February 13, 2020.

On August 19, 2020, Judge Young issued a written opinion and a corresponding order denying PCR without an evidentiary hearing.

This appeal followed. Defendant raises the following contentions for our consideration:

> POINT I
>
> THE PCR JUDGE ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING AS DEFENDANT HAD RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> > A. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE APPROPRIATE PRE-TRIAL MOTIONS.
> >
> > B. TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING DEFENDANT TO PLEAD GUILTY WHILE UNDER THE INFLUENCE OF MEDICATION.
>
> POINT II
>
> THE PCR JUDGE ERRED IN FINDING THAT THIS PETITION FOR POST-CONVICTION RELIEF WAS TIME BARRED.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. Post-conviction relief serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning

7

for PCR, a defendant must establish by a preponderance of the credible evidence that he or she is entitled to the requested relief. Ibid. The defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). In order to demonstrate ineffectiveness of counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. In State v. Fritz, our Supreme Court adopted the two-part test articulated in Strickland. 105 N.J. 42, 58 (1987).

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. The fact that a trial strategy fails to obtain the optimal outcome for a defendant is insufficient

to show that counsel was ineffective.  State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)).

The second prong of the Strickland test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.  Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors.  Id. at 694.  The second Strickland prong is particularly demanding:  "the error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached."  State v. Allegro, 193 N.J. 352, 367 (2008) (quoting State v. Castagna, 187 N.J. 293, 315 (2006)).  "Prejudice is not to be presumed," but must be affirmatively proven by the defendant.  Ibid. (citing Fritz, 105 N.J. at 52; Strickland, 466 U.S. at 693).  Furthermore, and of particular importance in this case, to set aside a guilty plea based on ineffective assistance of counsel, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial."  State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original).

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462–63. A defendant is entitled to an evidentiary hearing only when (1) he or she is able to prove a prima facie case of ineffective assistance of counsel, (2) there are material issues of disputed fact that must be resolved with evidence outside of the record, and (3) the hearing is necessary to resolve the claims for relief. R. 3:22-10(b). A defendant "must do more than make bald assertions that he was denied the effective assistance of counsel" to establish a prima facie case entitling him to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); see also State v. Porter, 216 N.J. 343, 355 (2013) (alteration in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)) ("[A] defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing[.]'").

"[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant

is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted." Ibid. (alteration in original) (quoting Marshall, 148 N.J. at 158).

When a PCR judge does not hold an evidentiary hearing, our standard of review is de novo as to both the factual inferences drawn by the PCR judge from the record and the judge's legal conclusions. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). We "view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Preciose, 129 N.J. at 463.

## III.

We first address whether defendant's petition is barred by Rule 3:22-12(a), which imposes time limits on filing a PCR. That rule provides in relevant part:

> (1) First Petition For Post-Conviction Relief. Except as provided in paragraphs (a)(2), (a)(3), and (a)(4) of this rule, no petition shall be filed pursuant to this rule more than 5 years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless:
>
> > (A) it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice[.]
>
> [Ibid.]

Our Supreme Court has emphasized the important policy underpinning the requirement that PCR petitions be timely filed, explaining that

> [t]here are good reasons for [Rule 3:22-12]. As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable. . . . Moreover, the Rule serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The Rule therefore strongly encourages those believing they have grounds for post-conviction relief to bring their claims swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.
>
> [State v. McQuaid, 147 N.J. 464, 485 (1997) (quoting Mitchell, 126 N.J.at 575–76, 601).]

In State v. Brown, we added that,

> [m]indful of these policy considerations, when a first PCR petition shows it was filed more than five years after the date of entry of the judgment of conviction, we hold that a PCR judge has an independent, non-delegable duty to question the timeliness of the petition, and to require that defendant submit competent evidence to satisfy the standards for relaxing the Rule's time restrictions pursuant to Rule 3:22-12. Absent sufficient competent evidence to satisfy this standard, the court does not have the authority to review the merits of the claim.
>
> [455 N.J. Super. 460, 470 (App. Div. 2018).]

12

The five-year time bar may be relaxed only under the specified circumstances set forth in Rule 3:22-12(a)(1)(A). In assessing whether excusable neglect justifies relaxation of the time bar for PCR petitions set forth in Rule 3:22-12(a)(2), we "consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009) (quoting State v. Afanador, 151 N.J. 41, 52 (1997)). More than "a plausible explanation for [the defendant's] failure to file a timely PCR petition" is required. Ibid. Our Supreme Court has required a showing of "compelling, extenuating circumstances," State v. Milne, 178 N.J. 486, 492 (2004) (quoting Afanador, 151 N.J. at 52), or alternatively, "exceptional circumstances . . . ." State v. Murray, 162 N.J. 240, 246 (2000).

We next apply these foundational principles to the facts presented in this case. Defendant's PCR petition was filed in August 2019. Defendant's judgment of conviction had been entered on February 3, 2012. Defendant's petition was thus filed two-and-a-half years beyond the five-year time limit. Defendant argues by way of excusable neglect that he was "unskilled in the law" and "was moved around various facilities during that time." Specifically, defendant's petition for post-conviction relief alleges the following timeline of events:

13

- In May 2013, trial counsel informed defendant that he had referred the case to the Office of the Public Defender, Appellate Section, to initiate a PCR motion.

- In June 2013, defendant contacted the Public Defender's Office and they sent him PCR paperwork to be filled out and submitted to the Hudson County Superior Court.

- In April 2014, defendant visited the prison law library and spoke with an inmate paralegal about his case. He was wrongly informed that his PCR had been dismissed.

- Defendant was the subject of numerous cell searches while in prison which is why he has lost most legal paperwork.

- On February 25, 2019, defendant sent a letter to the Public Defender's Office inquiring about the status of his PCR.

- On March 14, 2019, the Public Defender's Office notified defendant that they had "no record of [him] having ever applied for a PCR, or of having been assigned an attorney to represent [him] on PCR." They attached the paperwork for him to fill out.

- Defendant made attempts to contact his appellate counsel to verify that defendant requested to begin the PCR process.

- On August 15, 2019, defendant sent the second set of PCR paperwork to Hudson County.

Defendant claims these circumstances constitute excusable neglect and that he should be entitled to an evidentiary hearing. Judge Young disagreed, finding that

> [Defendant] claims he attempted to initiate his petition for post-conviction relief at the time his appeal was denied in 2013. He claims he tried contacting the Office of the Public Defender multiple times after that but never heard from them, even after he submitted a PCR application packet. [Defendant] further alleges that a paralegal in the law library at East Jersey State Prison advised him in 2014 that his PCR had been denied.
>
> [Defendant's] current application was submitted in August 2019, approximately seven years and six months after [the sentencing judge] entered the judgment of conviction against him. [Defendant] alleged that in April 2014 he was incorrectly told his PCR was denied, but then did not follow up on his PCR until 2019. [Defendant] claimed that he did not follow up because he was being transferred around New Jersey State Prison system and lacked consistent access to his case materials; however, this does not explain why he did not request a PCR application packet again until 2019.
>
> . . . .
>
> [Defendant's] filing came more than seven years after his judgment of conviction and the only facts he has alleged justifying his delay are the paralegal's

15

allegedly incorrect advice and the Public Defender's alleged failure to act on his first application. [Defendant] did not allege any action on his part after April 2014, when he still had nearly three years left before the five-year time limit was up; [defendant] did not explain his lack of action during those three years. [Defendant] has failed to allege the facts constituting "exceptional circumstances" required to relax Rule 3:22-12's bar. Mitchell, 126 N.J. at 580.

Additionally, [defendant] has not alleged sufficient facts that the ineffective assistance of counsel affected the determination of guilt such that Rule 3:22-12 should be overlooked in the interests of justice.

We agree with Judge Young's finding that defendant failed to submit "sufficient competent evidence" to satisfy the standards for relaxing the rule's time restriction. Brown, 455 N.J. Super. at 470. Nor has defendant demonstrated a miscarriage of justice sufficient to warrant setting aside the five-year time bar.

IV.

Although Judge Young determined that defendant's petition was time-barred, in an abundance of caution, he proceeded to address defendant's PCR contentions on the merits, concluding that defendant was not entitled to an evidentiary hearing or any other relief. Cf. ibid. ("Absent sufficient competent evidence to satisfy this standard, the court does not have the authority to review the merits of the claim."). We, too, have chosen to address defendant's PCR

16

contentions on the merits to reaffirm that enforcement of the time bar does not result in a miscarriage of justice.

## A.

Defendant contends "the identification procedure employed in his case was impermissibly suggestive" and further claims that "PCR counsel advanced this issue, albeit briefly." To support this contention, defendant cites to his original pro se PCR petition, which states:

> a. [Defendant] received ineffective assistance of trial counsel because trial counsel failed to file pretrial motions to counter impermissibly suggestive identification processes employed by the State without counsel, present;

We note that this is the only mention of failure to file pre-trial motions regarding an impermissibly suggestive identification procedure in defendant's pro-se petition. When defense counsel was assigned, he submitted a memorandum of law and appendix in support of defendant's petition. The only argument contained in that memorandum was that the plea was involuntary based on the medication defendant was taking at the time, which would render trial counsel ineffective for allowing the plea to go forward. There is no mention in defendant's counselled PCR brief of suggestive identification procedures.

Furthermore, at the PCR hearing, defendant's counsel did not argue this point. The prosecutor, however, addressed the out-of-court identification argument, stating,

> [defendant] does also claim that his attorney failed to file pretrial motions to counter [im]permissibly suggestive identification process. But there's nothing in his brief again that addresses from the record what he's basing his argument on. There's nothing that I saw in [there], basically, bald assertions, with regard to that—that argument. I see nothing attached, you know, that he points to that shows where the—the motion would have been or should have been filed.

Judge Young afforded PCR counsel an opportunity to address anything further and he chose not to do so. Defendant now asserts on appeal that the PCR judge did not address the out-of-court identification claim, necessitating a remand. We disagree. When a defendant "claims his [or her] trial attorney inadequately investigated his [or her] case, he [or she] must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170 (citing R. 1:6-6). "[B]ald assertions" of deficient performance are insufficient to support a PCR application. Ibid. In other words, a defendant must demonstrate filing a motion

18

to challenge the admissibility of an out-of-court identification procedure would have changed the result.  See Fritz, 105 N.J. at 63–64.

In this instance, defendant has made nothing more than a bald assertion that trial counsel should have filed a motion for a Wade hearing[3] to challenge the admissibility of the out-of-court identification procedures.  Defendant does not explain what was wrong with the identification procedures or how they should have been conducted to comply with our State's eyewitness identification jurisprudence.  See State v. Henderson, 208 N.J. 208, 303 (2011) ("[I]n the vast majority of cases, identification evidence will likely be presented to the jury. The threshold for suppression remains high.").  An evidentiary hearing is not to be used as a fishing expedition to explore PCR claims.  See Marshall, 148 N.J. at 58.  Defendant has thus failed to establish a prima facie claim of ineffective assistance of counsel warranting an evidentiary hearing.

B.

We likewise reject defendant's claim that he received ineffective assistance because his counsel allowed him to plead guilty while under the influence of medication.  As Judge Young correctly determined, that claim is belied by the record.

---

[3] United States v. Wade, 388 U.S. 218 (1967).

A-2117-20

Defendant claims at the time of the plea he was under the influence of "heavy psychotropic medications." He claims this affected his ability to plea knowingly. PCR counsel argued to Judge Young that defendant was not effectively represented because trial counsel was aware of this medication and did not conduct an investigation at the plea hearing. Defendant now claims, without citing to any case law, that "defense counsel should have indicated information of which he had knowledge that (for example) 'X' medication causes drowsiness, but defendant is not currently experiencing drowsiness, or 'Z' medication curtails anxiety, and it is functioning properly in managing any anxiety."

After considering this argument, Judge Young found:

> [Defendant's] claim [that he was heavily medicated] is inconsistent with his answers to [the judge who accepted the guilty pleas] at the plea hearing. [The judge] asked if he was under the influence of any substances affecting his ability to understand what was going on. Furthermore, [defendant's] counsel at the plea hearing informed the [c]ourt that he had spoken to [defendant] about the prescription medication [defendant] was taking, and that [defendant] told him it did not affect his ability to understand.
>
> . . . .
>
> [Defendant] claims he was "under the influence of various medications that deprived him of full understanding" but presented no documentary evidence

20

showing what medications those were or how they affected him.

Judge Young also determined that "[defendant's] answers to [the judge who accepted the guilty plea] were clear, direct and appropriate replies to the questions being asked" and as such "[defendant's] answers betray his claim that he was under the influence of drugs and could not understand what was happening."

We agree with Judge Young's analysis of the record. Defendant failed to provide any legally competent evidence of the medications he was taking and their effect on his ability to understand at the time of the plea hearing. To the contrary, defendant attested during the plea colloquy he was not on any "medication . . . that would interfere with [his] ability to understand what [he was] doing [there] . . . ." Defendant has thus failed to show that trial counsel rendered constitutionally deficient representation under the first prong of the Strickland test. It is unrealistic and unreasonable to have expected counsel to essentially cross-examine his client after he had already responded that the medication did not affect him.

But even assuming for the sake of argument that defendant had lied under oath about his medications, defendant has failed to establish the second prong of the Strickland test. We stress that defendant received the benefit of a

21

favorable plea bargain in which the State not only agreed to dismiss multiple charges, including attempted murder, but also agreed to refrain from seeking consecutive sentences on defendant's separate armed robbery convictions, involving separate victims. Defendant has thus failed to establish that there is a reasonable probability that but for counsel's ineffective assistance, he would have rejected the favorable plea offer and insisted on going to trial. See DiFrisco, 137 N.J. at 457.

To the extent that we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-2117-20